IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED CARGO MANAGEMENT, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CARLTON BLAIR III; and ) <br> WORLDLOG, LLC, ) <br> ) <br> Defendants. ) <br> ) | No. 2:25-cv-04196-DCN <br><br> **ORDER** |

    This matter is before the court on United Cargo Management's ("UCM") motion for temporary restraining order ("TRO") and preliminary injunction, against Carlton Blair III ("Blair") and Worldlog, LLC ("Worldlog") (collectively, "defendants"). ECF No. 44. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

    UCM's preliminary injunction application is based on its federal claims under the Lanham Act, 15 U.S.C. § 1125 et seq. ("Lanham Act"); the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA"); the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); and the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"). ECF Nos. 1, Compl. ¶ 8; 44 at 2.

    The dispute arises between UCM and Blair, who worked at UCM from 2008 until April 22, 2025. Compl. at ¶ 18. Blair is also the owner of Worldlog. Id. at ¶ 7. UCM has operated under the names "United Cargo Management" and "UCM" since it was incorporated by Thomas Lee in 1987. ECF No. 13-1 at 3. It provides freight and cargo delivery services and operates under the website www.ucmcargo.com. Id. UCM alleges

1

that Blair is taking its customers and trade secrets from the UCM Charleston division and is using UCM's mark without permission. Id. at 1. In contrast, defendants allege Blair and UCM were partners or joint venturers, that defendants are entitled to the Charleston division customers and information, and that they are rebranding and running the former division of UCM Charleston as Worldlog. ECF No. 18 at 1–2. Defendants contend four written agreements between Blair and Thomas Lee govern the relationship of the parties as joint venture partners. Id. at 2.

On April 24, 2025, Blair and Worldlog filed a separate action in the Charleston County Court of Common Pleas against UCM alleging breach of contract, fraud, and defamation, among other claims. See Worldlog, LLC v. United Cargo Mgmt., Inc., No. 2025-CP-10-02375 (Charleston Cnty. Ct. C. P. Apr. 24, 2025). UCM removed the case to this court on May 23, 2025, and this court granted a motion to consolidate the cases for discovery and trial on June 18, 2025. ECF Nos. 45; 52.

UCM initially filed this action in the United States District Court for the Central District of California on April 23, 2025. ECF No. 1. It moved for a TRO on May 1, 2025. ECF No. 13. On May 19, 2025, the District Court for the Central District of California transferred the case to this court. ECF No. 38. UCM then refiled its motion for a preliminary injunction in this court on May 30, 2025. ECF No. 44. On June 13, 2025, defendants filed their response in opposition to the motion for a preliminary injunction. ECF No. 50. On June 25, 2025, UCM filed its reply to defendants' response to its motion for a preliminary injunction. ECF No. 59. The court held a hearing on UCM's motion for a preliminary injunction on June 30, 2025. ECF No. 51. As such, this case is fully briefed and ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions.  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  United States v. South Carolina, 840 F. Supp. 2d 898, 914 (D.S.C. 2011) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)), modified in part, 906 F. Supp. 2d 463 (D.S.C. 2012), aff'd, 720 F.3d 518 (4th Cir. 2013).  The party seeking a preliminary injunction must make a "clear showing" that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of hardships tips in its favor, and (4) the injunction is in the public interest.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 22 (2008).  To succeed, the movant must satisfy all four of the Winter factors.  Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009), vacated and remanded, 559 U.S. 1089 (2010), reissued in relevant part by per curiam published order, 607 F.3d 355 (4th Cir. 2010).  "A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter, 555 U.S. at 24.

"A preliminary injunction may be characterized as being either prohibitory or mandatory."  League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 235 (4th Cir. 2014).  Mandatory relief is "disfavored, and warranted only in the most extraordinary circumstances."  S.C. Progressive Network Educ. Fund v. Andino, 493 F. Supp. 3d 460, 466 (D.S.C. 2020) (quoting Taylor v. Freeman, 34 F.3d 266, 270 n.2 (4th Cir. 1994)).  "Mandatory preliminary injunctions . . . should be granted only in those circumstances when the exigencies of the situation demand such relief."  Pierce v. N.C. State Bd. of

Elections, 97 F.4th 194, 209 (4th Cir. 2024) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)).

### III. DISCUSSION

UCM seeks a mandatory preliminary injunction and therefore bears an even higher burden of proving the four elements that favor an injunction.[1] See Winter, 555 U.S. at 20. The court will begin by analyzing the first Winter factor—whether UCM has made a clear showing that it is likely to succeed on the merits of its claims at trial. See id. at 20, 22.

UCM asks the court to issue a preliminary injunction ordering the following relief, enjoining defendants from:

> (1) [U]sing the UCM Marks in any manner, including on their websites, email domains, and communications with third parties; (2) ordering Defendants remove all language from the Worldlog website suggesting that Blair and/or Worldlog are associated with UCM in any way; (3) requiring that Defendants return control of the website www.ucmchs.com to UCM; (4) returning control of the email server for the domain ucmchs.com and removing Defendants' access to the server; (5) returning control to UCM of UCM's customer data management system, called "Info-X," and removing Defendants' access to the system; and (6) enjoining Defendants from using or further disclosing Plaintiff's trade secrets as further defined herein, but that includes customer lists and information, vendor lists, information about pricing and contracting terms, and statuses of pending shipments and pending projects.

ECF No. 13-1 at 2.

The court ultimately finds that UCM has failed to demonstrate by a clear showing that it is likely to succeed on its claims under the Lanham Act, the DTSA, the CFAA and

---

[1] The standard for granting a TRO and preliminary injunction are the same. Maages Auditorium v. Prince George's Cnty., Md., 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014), aff'd, 681 F. App'x 256 (4th Cir. 2017). Here, as the motion for a TRO was not made ex parte and was made simultaneously with the motion for a preliminary injunction, in this order the court predominately refers to the motion, ECF No. 44, as a motion for preliminary injunction.

4

the ACPA. The court denies all of UCM's requests because it finds UCM cannot meet the first Winter factor, and as such the court denies UCM's motion for a preliminary injunction and declines to consider the remaining Winter factors. See Real Truth, 575 F.3d at 346–47. In this order, the court will analyze each claim in turn.

### 1. UCM's Likelihood of Success on the Merits of its Lanham Act Claim

To succeed in a trademark infringement action under the Lanham Act, a plaintiff must establish: (1) that it owns a valid mark; (2) that the defendant used the mark in commerce and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (4) that the defendant's use of the mark is likely to confuse customers. Rosetta Stone, Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012); see also 15 U.S.C. § 1114(1)(a). The court addresses the validity of the marks first.

The marks in dispute are: (1) "UCM"; (2) "United Cargo Management"; (3) "UCMCHS"; (4) "WCM"; and (5) "WCMCHS." ECF No. 44-1 at 2. Generally, "the party claiming ownership of a mark must be the first to use the mark in the sale of goods. The party claiming ownership must also use the mark as a trademark, that is, the mark must be used to identify the source of the goods to potential customers." George & Co. v. Imagination Ent. Ltd., 575 F.3d 383, 400 (4th Cir. 2009) (citation and footnote omitted). As long as the party claiming ownership of a mark "is the first to use a particular mark to identify his goods in a given market, and so long as that owner continues to make use of the mark, he is 'entitled to prevent others from using the mark to describe their own goods' in that market." Id. (quoting Defiance Button Mach. Co. v.

5

C & C Metal Prods. Corp., 759 F.2d 1053, 1059 (2d Cir. 1985)). "Common law determines who enjoys the exclusive right to use an unregistered trademark, the extent of such rights, and the proper geographical scope of any injunctive relief necessary to protect against the infringement of such rights." Emergency One, Inc. v. Am. Fire Eagle Engine Co., 332 F.3d 264, 267 (4th Cir. 2003). "Marks that are merely descriptive are accorded protection only if they have acquired a secondary meaning, that is, if in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." Evans v. Paramount Pictures Corp., 7 F. App'x 270, 271–72 (4th Cir. 2001) (quoting Sara Lee Corp. v. Kayser–Roth Corp., 81 F.3d 455, 464 (4th Cir.1996) (internal quotation marks omitted)).

UCM does not have a registered trademark[2] but bases its motion on the argument that it was the first to do business using the marks "United Cargo Management" and "UCM." ECF No. 59 at 11. It argues that, due to its continuous use of the UCM marks for over thirty years, the marks have acquired a "secondary meaning" among the relevant public of cargo and freight customers and vendors. Id. at 12. UCM further argues its ownership of its marks also extends to the "UCMCHS" mark and the www.ucmchs.com website. Id. UCM contends defendants have been operating under the new names, "WCMCHS" and "WCM," which has confused customers, and that defendants have used these marks to attempt to move UCM's clients to their business. ECF No. 30 at 2.

---

[2] On February 12, 2025, UCM applied for a trademark application with the United States Patent and Trademark Office for the mark "UNITED CARGO MANAGEMENT INC." See ECF No. 15, Lee Decl., ¶ 6. That application is pending under US Serial Number 99039318. ECF No. 13-1 at 1.

In response, defendants argue that they are no longer using the "UCM" and "United Cargo Management" marks and that UCM's claim related to those marks is moot. ECF No. 18 at 11. They argue that they have created a new logo and have stopped using any logo, email, or website containing "UCM." Id. Defendants further contend that "WCM" and "WCMCHS" are comprised of the Worldlog Charleston acronym and that the use of acronym letters is a descriptive mark that is common in the industry and is not likely to confuse their sophisticated customers. Id. at 7.

The court finds that UCM's claim regarding the "United Cargo Management," "UCM" and "UCMCHS" marks is moot because defendants have ceased using the marks and only used them as they were transitioning the UCM Charleston division to the Worldlog Charleston division. ECF No. 50 at 7. Additionally, as for the "WCM" and "WCMCHS" marks, UCM has not made a clear showing it has a valid claim as to those marks, as it is common in the shipping industry to use a mark that is the acronym for a company, and here, Worldlog Charleston is using its acronym to create its logo. ECF No. 50-3 at 4. Because the court finds the first element of the Lanham Act is not met, the court need not analyze the remaining elements and finds UCM has not made a clear showing it is likely to succeed on the merits of this claim.

### 2. UCM's Likelihood of Success on the Merits of its Defend Trade Secrets Act Claim

The court now turns to UCM's claim under the DTSA. The elements for misappropriation under the DTSA are: (1) the existence of a trade secret; (2) communicated in confidence by the plaintiff to the employee; (3) disclosed by the employee in breach of that confidence; (4) acquired by the defendant with knowledge of the breach of confidence; and (5) used by the defendant to the detriment of the plaintiff.

Prysmian Cables & Sys. USA, LLC v. Szymanski, 573 F. Supp. 3d 1021, 1037 (D.S.C. 2021).

Before UCM can show that defendants misappropriated a trade secret, or threatened to do so, it must first establish the existence of a trade secret. See id.

In general, a trade secret is information that

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

See 18 U.S.C. § 1839(3)(B).

UCM must "specifically identify the trade secrets at issue. Parties cannot extend this concept to reach 'virtually all of the information [the former employee] acquired during his employment.'" Prysmian Cables, 573 F. Supp. 3d at 1037 (alteration in original) (citation omitted) (quoting Carolina Chem. Equip. Co. v. Muckenfuss, 471 S.E.2d 721, 724–25 (S.C. Ct. App. 1996)).

UCM alleges its trade secrets include confidential files of its customers, vendors, and shipments. ECF No. 13-1 at 16. It argues these files are unknown to the general public, derive their value from being unknown to competitors and that it has taken measures to protect these lists and files, including by storing them in a secure information management database accessible to only a limited number of UCM employees. Id. at 9, 16.

In contrast, defendants argue UCM's "trade secrets" are not specifically identified as it only generically alleges that certain business records are "trade secrets," pointing to

its request for "UCM's confidential customer list and files, the confidential files it maintains on vendors, its shipping files, and other confidential financial, business, technical, and economic information of UCM." ECF No. 18 at 12. They argue UCM cannot stop defendants from soliciting customers that they have always solicited or using vendors that they have always used. ECF No. 50 at 10–11. They further argue much of UCM's business information is publicly available, as all cargo loads entering and exiting the United States include bills of lading that provide the contact details for the parties involved in the shipment. Id.

The court finds UCM has not clearly shown that it has taken reasonable efforts to maintain the secrecy of its information. For example, UCM did not require employees to sign a non-compete, non-solicitation, or confidentiality agreement. ECF No. 19, Blair Decl. ¶ 12. UCM has also not made a clear showing it was vigilant in protecting its alleged trade secrets, as defendants had access to the information, and the information consisted of clients they developed. Id. ¶¶ 31–33. Further, the alleged trade secrets were not identified with particularity, and instead were generically identified as "customer lists and information pertaining to those customers . . . [and] vendor lists including shipping and freight transport companies," with no description of the files, no description of their location, and no document titles. ECF No. 18 at 12.

Because UCM has failed to make a clear showing that it took reasonable efforts to maintain the secrecy of the documents and has not specifically identified the documents, it has not clearly shown that these documents merit protection as trade secrets. Consequently, it has failed to make a clear showing that it is likely to succeed on the merits of its claims under the DTSA.

9

### 3. UCM's Likelihood of Success on the Merits of its Computer Fraud and Abuse Act Claim

The CFAA is primarily a criminal statute but "permits private parties to bring a cause of action to redress a violation of the CFAA." Tech Sys., Inc. v. Pyles, 630 F. App'x 184, 186 (4th Cir. 2015) (citing A.V. ex rel. Vanderhye v. iParadigms, LLC, 562 F.3d 630, 645 (4th Cir.2009)). A civil suit may be brought in limited circumstances by "[a]ny person who suffers damage or loss" as a result of a CFAA violation. 18 U.S.C. § 1030(g). "A person violates the CFAA by 'intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer,' 18 U.S.C. § 1030(a)(2)(C), or 'intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss,' 18 U.S.C. § 1030(a)(5)(C)." Pyles, 630 F. App'x at 186.

UCM argues that, after Blair's termination on April 22, 2025, defendants continued to access and exercise control over UCM's Info-X system and its ucmchs.com email server and continued to control the www.ucmchs.com website. ECF No. 13-1 at 25. It contends that; although Blair was initially authorized to access UCM's computers, file systems, and website domains when he was an employee of UCM; that authorization ended when he began using those systems against UCM's interest. Id.

In response, defendants argue that they were authorized to access UCM's computers, file systems, and website domains and that they were not acting in bad faith against UCM's interest. ECF No. 18 at 5. They further argue they no longer use UCM's system or website and that, instead, they exclusively use a separate version of the Info-X system ("Info-X-2") that they developed. Id. at 18.

The court finds UCM has failed to clearly show that defendants accessed UCM's computers without authorization. UCM has not provided evidence that defendants accessed the UCM computers without authorization or that the computers were protected. Further, defendants have ceased use of UCM's www.ucmchs.com website, and use of the Info-X system, making those claims moot. ECF Nos. 50 at 6; 19, Blair Decl. at ¶ 34. As such, UCM has failed to show by a clear showing it would succeed on its CFAA claim.

### 4. UCM's Likelihood of Success on the Merits of its Anticybersquatting Consumer Protection Act Claim

The ACPA states: "[a] person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark . . . ; and (ii) registers, traffics in, or uses a domain name [that is confusingly similar to another's mark or dilutes another's famous mark]." 15 U.S.C. § 1125(d)(1)(A).

UCM alleges Blair's website, www.worldlogllc.com, has a nearly identical appearance to the www.ucmchs.com site, including identical images and business information. ECF No. 13-1 at 10. It argues that it currently does not have control over either www.worldlogllc.com or www.ucmchs.com and that defendants' use and control of the domain name www.ucmchs.com is likely to confuse customers. Id. at 20.

In contrast, defendants argue that, much like its arguments on its trademark claims, UCM's request for an order to preclude alleged cybersquatting is moot. ECF No. 18 at 15. Defendants contend they have ceased use of the www.ucmchs.com website; have secured a new website, logo and email domain; and have done so in good faith. Id.

11

The court finds that UCM is not likely to succeed on the merits of this claim because defendants maintain they are no longer using the domain name in question, www.ucmchs.com, making UCM's claim moot. See 15 U.S.C. § 1125(d)(1)(A)(ii). Regardless of any alleged similarity of www.ucmchs.com and www.worldlogllc.com, UCM is not the owner of any marks on the www.worldlogllc.com website. ECF No. 19, Blair Decl. at ¶ 36. Further, UCM has not made a clear showing defendants acted in bad faith. Thus, UCM has not made a clearly showing it is likely to succeed on the merits of its ACPA claim.

In sum, UCM has failed to make a clear showing that it is likely to succeed on the merits of its claims under the Lanham Act, the DTSA, the CFAA and the ACPA, and its motion for a preliminary injunction is denied accordingly.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** UCM's motion for a TRO and preliminary injunction.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**July 30, 2025
Charleston, South Carolina**