**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| UNITED CARGO MANAGEMENT, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CARLTON III BLAIR; WORLDLOG, )<br>LLC; DEBORAH PAGE; NEIL MYERS; )<br>HOGAN HECK; JILLIAN )<br>STEINKRUGER; MARCO SAVINO; )<br>MICHELLE ALLEN; JAN PARK; and )<br>NICOLETTE BERROUET, )<br>)<br>Defendants. )<br>_____ )<br>)<br>WORLDLOG, LLC; and CARLTON W. )<br>BLAIR, )<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>UNITED CARGO MANAGEMENT, INC.; )<br>THOMAS LEE; and JEFF LEE, )<br>)<br>Defendants. )<br>_____ ) | **ORDER**<br><br>No. 2:25-cv-04196-DCN<br>No. 2:25-cv-04501-DCN |

This matter is before the court on defendants Worldlog, LLC ("Worldlog, LLC")

and Carlton Blair III's ("Blair") (together with Worldlog, LLC, the "Worldlog

Defendants") motion to dismiss, ECF No. 67, and motion to strike, ECF No. 68. Also

before the court is defendants Deborah Page, Neil Myers, Hogan Heck, Jillian

Steinkruger, Marco Savino, Michelle Allen, Jan Park, and Nicolette Berrouet's

(collectively, the "Individual Defendants") (together with the Worldlog Defendants,

"Defendants") motion to dismiss, ECF No. 85. For the reasons set forth below, the court

1

grants in part and denies in part the Worldlog Defendants' motion to dismiss, ECF No. 67, and grants the Worldlog Defendants' motion to strike, ECF No. 68. The court grants in part and denies in part the Individual Defendants' motion to dismiss, ECF No. 85. The court orders supplemental briefing on the choice of law issue raised in the Individual Defendants' motion to dismiss, ECF No. 85 at 5–7.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff United Cargo Management, Inc. ("UCM") is a global logistics company based in Los Angeles, California. ECF No. 64, Amend. Compl. ¶¶ 1–2. Blair was the manager of UCM's Charleston, South Carolina division until his termination in April 2025. Id. ¶ 3. UCM terminated Blair because he was operating a competing business, Worldlog, LLC, while employed with UCM. Id. ¶¶ 4–5. UCM cited multiple actions in which Blair furthered the interests of Worldlog, LLC at UCM's expense—including, accessing UCM's client data without authorization, using UCM's intellectual property and branding, and misleading clients to believe that UCM and Worldlog, LLC were affiliated in order to divert payments to bank accounts held by Blair and Worldlog, LLC. Id. ¶ 4. According to UCM, Blair continues to profit from UCM's intellectual property and other information misappropriated from UCM during his employment. Id. ¶ 5.

UCM also brings suit against its former employees, the Individual Defendants, all of whom resigned from UCM on April 30, 2025 to work for Blair at Worldlog, LLC. Id. UCM alleges that the Individual Defendants are complicit in Blair's efforts to misappropriate UCM's client data and intellectual property as well as Blair's efforts to deceive UCM's clients into believing that Wordlog, LLC is a continuation of UCM. Id.

### B. Procedural History

The Worldlog Defendants have asserted various claims against UCM and its officers in a related action.  See Case No. 2:25-cv-04501-DCN.  The court issued an order consolidating the related action with the instant suit for purposes of discovery and trial.  See id., ECF No. 7.

UCM initiated this action against the Worldlog Defendants in the United States District Court for the Central District of California on April 23, 2025.  ECF No. 1, Compl.  On May 16, 2025, the Central District of California granted the Worldlog Defendants' motion to transfer venue to this district pursuant to 28 U.S.C. § 1404(a). ECF No. 36 at 14.  UCM filed an amended complaint on August 19, 2025, and this pleading is the operative complaint.  See ECF No. 64, Amend. Compl.  The Individual Defendants were added as parties to this suit in UCM's amended complaint.  See id. ¶¶ 12–19.

UCM asserts claims against all Defendants for trademark infringement under the Lanham Act, 15 U.S.C. § 1114; violations of the Anti-Cyber Squatting Consumer Protection Act, 15 U.S.C. § 1125(d);[1] theft of trade secrets; interference with contractual relations; intentional interference with prospective economic relations; conversion; common law fraud; and unfair trade practices.  Id. ¶¶ 78–199.  UCM asserts claims against the Worldlog Defendants for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), and for violations of California unfair competition law.  Id. ¶¶

---

[1] At the hearing on the instant motions, UCM's counsel consented to dismissal of UCM's Section 1125(d) claim insofar as it was premised on Defendants' alleged use of the domain name, "www.worldlogllc.com."  See ECF No. 91.  The court therefore dismisses UCM's Section 1125(d) claim to this extent.

118–31, 200–14.  UCM asserts claims against only the Individual Defendants for breach of contract, id. ¶¶ 144–52, and against only Blair for intentional interference with contractual relations, id. ¶¶ 153–60.

On September 17, 2025, the Worldlog Defendants moved to dismiss UCM's amended complaint in its entirety or, in the alternative, to dismiss UCM's California unfair competition law causes of action.  ECF No. 67-1 at 1.  UCM responded in opposition on October 10, 2025, ECF No. 70, to which the Worldlog Defendants did not reply.

The Worldlog Defendants also filed a motion to strike on September 17, 2025. ECF No. 67.  UCM responded in opposition on October 1, 2025, ECF No. 71, and the Worldlog Defendants replied on October 8, 2025, ECF No. 72.

On October 31, 2025, the Individual Defendants moved to dismiss UCM's amended complaint in its entirety or, in the alternative, to dismiss UCM's common law fraud and breach of contract claims.  ECF No. 85 at 3–5.  UCM responded in opposition on November 14, 2025, ECF No. 86, and the Individual Defendants replied on November 21, 2025, ECF No. 88.  The court held a hearing on these motions on January 8, 2026. ECF No. 91.  As such, the instant motions are now ripe for the court's review.

## II.  DISCUSSION

The court begins with Defendants' motions to dismiss, analyzing whether UCM is required to obtain a certificate of authority to transact business in South Carolina.  The court then turns to the Worldlog Defendants' motion to dismiss as it pertains to UCM's California unfair competition law claims.  Next, the court considers the Individual Defendants' motion to dismiss as it pertains to UCM's common law fraud and breach of

contract claims.  Finally, the court addresses the Worldlog Defendants' motion to strike.

### A.  Motions to Dismiss

#### 1.  Standard of Review

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  Allegations that are "merely consistent with" a defendant's liability "stop[ ] short of the line between possibility and plausibility of 'entitlement to

relief.'" <u>Twombley</u>, 550 U.S. at 557.  Determining whether a complaint states a plausible claim for relief is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Ashcroft</u>, 556 U.S. at 679.

### 2. Foreign Business Certificate Requirement

Defendants argue that UCM cannot maintain suit in South Carolina because UCM has not obtained a certificate of authority to transact business as a foreign corporation as required by South Carolina law.[2]  ECF Nos. 67-1 at 3, 85 at 3; <u>see also</u> S.C. Code Ann. § 33-15-101(a).  UCM responds with three arguments.  First, it argues that the Worldlog Defendants are judicially estopped from claiming that UCM cannot maintain suit in South Carolina because they argued that South Carolina was a proper venue in their successful motion to transfer venue.  ECF No. 70 at 3–5.  Second, UCM contends that this court—being the transferee court after a successful motion to transfer venue—must apply the law of the transferor court, and California law does not require UCM to obtain a certificate of authority to transact business in South Carolina.  <u>Id.</u> at   5–6.  Third, UCM asserts that it only engages in interstate commerce to service its South Carolina clients, placing it within the interstate commerce exception to South Carolina's licensing requirement for foreign business entities.  <u>Id.</u> at 6–8; <u>see also</u> S.C. Code Ann. § 33-15-101(b)(11).  The court first takes up whether UCM's business activities fall within the interstate commerce exception to South Carolina's licensing requirement.

South Carolina law requires a foreign corporation to obtain a certificate of authority to transact business in South Carolina.  S.C. Code Ann. § 33-15-101(a).  It also

---

[2] The Individual Defendants incorporate into their motion dismiss all arguments made in the Worldlog Defendants' motion to dismiss pertaining to the foreign business certificate requirement.  ECF No. 85 at 3.

prohibits an entity that is not in compliance with Section 101(a) from maintaining "a proceeding in any court in this State until it obtains a certificate of authority." Id. § 102(a).  However, Section 101(b)(11) excepts entities "transacting business in interstate commerce[ ]" from Section 101(a)'s registration requirement.  See id. § 101(a), (b)(11). Both parties cite to Section 101's official commentary to support their respective positions.  See ECF Nos. 67-1 at 3–4, 70 at 7–8, 85 at 5, 86 at 3–4.

Defendants rely on the preamble to Section 101's commentary, which states in relevant part that "[t]ypical conduct requiring a certificate of authority includes . . . owning or using real estate for general corporate purposes."  S.C. Code Ann. § 33-15-101, preamble to cmt. (emphasis added); see also ECF No. 85 at 5.

UCM, for its part, leans on comment four to Section 101, which states in pertinent part that

> [a] corporation need not obtain a certificate of authority even if it also does work and performs acts within the state incidental to the interstate business[ ] . . . . Similarly, an office may be maintained by a corporation in a state without obtaining a certificate of authority if the office's functions relate solely to interstate commerce.

S.C. Code Ann. § 33-15-101, cmt. 4 (emphasis added); see also ECF No. 86 at 4.

An affidavit from UCM's vice president asserts that UCM's Charleston Office "has been entirely engaged in global logistics for freight shipping and delivery for its entire existence." ECF No. 70-1 ¶ 2.  He further represents that "[e]ven if some of UCM's clients[ ] . . . were based in Charleston, the contracts and services provided to those clients and customers pertained to shipments to or from other locations outside of South Carolina, including not only other states but locations all over the world." Id. ¶ 3. Furthermore, UCM is a self-purported "global logistics company based in Los Angeles"

that "secures shipping and freight delivery services for its various clients throughout the world[.]"  Amend. Compl. ¶ 2.  Given that UCM only engages in the business of freight shipping and global logistics from its Charleston office, its business activities in South Carolina solely relate to interstate commerce.  See S.C. Code Ann. § 33-15-101, cmt. 4; McComb v. Herlihy, 161 F.2d 568, 570 (4th Cir. 1947) ("[O]ne who buys and imports goods across state lines for sale and distribution within his state is engaged in interstate commerce[.]")

Defendants observe that UCM maintains an office in Charleston, with permanent employees, to "do[ ] business with 'Charleston-based clients and customers.' "  ECF No. 67-1 at 4 (quoting Amend. Compl. ¶ 2).  Defendants argue that such activities constitute "using real estate for general corporate purposes[,]" bringing UCM within the scope of Section 101(a)'s registration requirement according to the statute's commentary.  S.C. Code Ann. § 33-15-101, preamble to cmt.; see ECF Nos. 67-1 at 4, 85 at 5.  The court is not persuaded by this argument for two reasons.

First, UCM maintains its headquarters in Los Angeles, California and its Charleston office is one of its two satellite domestic offices.  Amend. Compl. ¶ 2.  Thus, UCM's Charleston office only provides services that relate to its business-specific function of providing freight shipping and global logistics services.  See ECF No. 70-1 ¶¶ 2–3.  There is no indication in the record that UCM's Charleston office serves a general corporate function, and these functions are likely performed at UCM's headquarters in Los Angeles.  UCM's business activities in Charleston thus constitute "acts within the state that are incidental to [its] interstate business[.]"  See S.C. Code Ann. § 33-15-101, cmt. 4.  While Defendants emphasize that UCM also retains permanent employees in

8

South Carolina, it cannot "be doubted that the employees of . . . an importer " shipping goods across state lines "are engaged in such [interstate] commerce." See McComb, 161 F.2d at 570.

Second, the commentary to Section 101 also indicates that "an office may be maintained by a corporation in a state without obtaining a certificate . . . if the office's functions relate solely to interstate commerce." S.C. Code Ann. § 33-15-101, cmt. 4 (emphasis added). As noted above, UCM's business activities solely relate to interstate commerce. Supra p. 8. While each party has cited to portions of Section 101's commentary that conflict to some degree, the court is not persuaded that the "general corporate purposes" language requires entities to register solely on the basis of maintaining a physical office in South Carolina. Compare S.C. Code Ann. § 33-15-101, preamble to cmt., with id. § 101, cmt. 4. Indeed, if the court construed this portion of the commentary to require entities solely engaged in interstate commerce to obtain a certificate to transact business, then the commentary would effectively swallow the explicit statutory exception for entities engaged in interstate commerce. See id. § 101(b)(11). The court will not adopt such an expansive reading of Section 101's commentary.

In an attempt to cast some of UCM's business as intrastate in nature, Defendants provide a list of various South Carolina clients serviced by UCM's Charleston office in their reply brief. ECF No. 88-2. At the same time, Defendants also concede that UCM's contracts with these South Carolina clients were for the "import or export [of] goods and materials." ECF No. 88 at 5. The Fourth Circuit has determined that an importer or exporter of goods is engaged in interstate commerce. McComb, 161 F.2d at 570.

Defendants have not provided the court with any evidence indicating that UCM's contracts with South Carolina clients were fulfilled using goods solely manufactured in South Carolina and shipped solely within South Carolina.  See ECF Nos. 88, 88-2.  In the absence of such evidence, a list of UCM's South Carolina clients does not establish that UCM engages in intrastate commerce from its Charleston office.[3]  See McComb, 161 F.2d at 570 (noting that "activities relating to the purchase and receipt of out-of-state goods" constituted interstate commerce when company sold and delivered goods within the state that had been "procured outside the state in conformity with prior orders").

Because UCM's business activities in South Carolina solely relate to interstate commerce, the court finds that UCM is not required to obtain a certificate of authority to transact business in South Carolina pursuant to Section 101(b)(11)'s interstate commerce exception.[4]  The court thus denies Defendants' motions to dismiss UCM's amended complaint on this ground.

### 3.  California Unfair Competition Law

UCM asserts two causes of action against the Worldlog Defendants under Sections 17200 and 17500 of the California Business and Professions Code.  Am. Compl. ¶¶ 200–14.

Section 17200 is California's unfair competition law (the "UCL"), and Section

---

[3] The court will not address Defendants' argument that UCM has not registered its Charleston office with the Federal Maritime Commission, ECF No. 88 at 6, as this argument was raised for the first time in its reply brief.  See Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." (citing United States v. Williams, 445 F.3d 724, 736 n.6 (4th Cir. 2006))).

[4] Having resolved the foreign business certificate issue under Section 101(b)(11)'s exception, the court dispenses with analyzing UCM's remaining arguments on the issue.

17500 is California's false advertising law (the "FAL").  See Nationwide Biweekly Admin., Inc. v. Superior Ct., 462 P.3d 461, 464 (Cal. 2020).  The UCL prohibits unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising" including those acts prohibited by the FAL.  Cal. Bus. & Prof. Code § 17200; accord Kwikset Corp. v. Superior Ct., 246 P.3d 877, 883 (Cal. 2011).  The FAL, in turn, contains a broad prohibition on false advertising:

> It is unlawful for any person, firm, corporation, or association, or any employee thereof with intent . . . to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, . . .[ ] any statement, . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be true or misleading[ ] . . . .

 Cal. Bus. & Prof. Code § 17500.

The Worldlog Defendants argue that UCM has not alleged sufficient facts to state a claim for relief under the FAL.  ECF No. 67-1 at 7.  The Worldlog Defendants also construe UCM's amended complaint to only allege misconduct occurring in South Carolina and seek dismissal of UCM's UCL and FAL claims on the basis that California law cannot reach "such extraterritorial" conduct.  Id. at 7–8.  The court considers these arguments in turn.

### a.  Sufficiency of FAL Claim

Conduct that violates the FAL includes: (1) the making, disseminating, or causing the dissemination of an untrue or misleading statement "before the public in this State," or (2) making, disseminating, or causing the dissemination of an untrue or misleading statement "from this state before the public in any state."  Cal. Bus. & Prof. Code

§ 17500.  The second class of activities prohibited by the FAL is not at issue.  See Amend. Compl.  Therefore, for UCM's FAL claim to survive a motion to dismiss, UCM must allege that the Worldlog Defendants made untrue or misleading statements "before the public in this state"—i.e., the state of California.  See Cal. Bus. & Prof. Code § 17500.

UCM alleges that the Worldlog Defendants made untrue or misleading statements to its clients and agency partners—not to UCM itself.  See Amend. Compl. ¶ 209–10.  The amended complaint does assert that these untrue or misleading statements caused harm to UCM.  Amend. Compl. ¶¶ 212–13.  As such, there is a disconnect between the recipients of Worldlog's untrue or misleading statements (UCM's clients and agency partners) and the party who experienced the harm as a result of those statements (UCM).  UCM argues that it has stated a claim under the FAL because "the harm from Defendants' conduct took place in California[ ]" as UCM is a California entity.[5]  ECF No. 70 at 10.

To be sure, FAL claims often involve a California resident plaintiff who experiences harm in California.  See, e.g., Kaksey v.Nike, Inc., 45 P.3d 243, 247, 249 (Cal. 2002) (California resident plaintiff suing on behalf of California's general public); Colgan v. Leatherman Tool Grp., Inc., 38 Cal. Rptr. 3d 36, 40–41 (Ct. App. 2006)

---

[5] UCM also asserts that it has "established a claim" under the UCL and FAL because it has satisfied the two-part standing inquiry that governs UCL and FAL claims under California Supreme Court precedent.  ECF No.70 at 10 (citing Kwikset Corp., 246 P.3d at 885).  While standing is an essential component of UCL and FAL claims, Kwikset Corp., 246 P.3d at 885, establishing standing does not obviate a plaintiff's burden to plausibly allege facts that satisfy the substantive components of the UCL and FAL as well, id. at 884 (distinguishing the "substantive reach" of the UCL and FAL, from the discrete "standing requirement" under either statute).

(Plaintiffs were "representative members of a class of persons in California[.]").  Unlike the instant suit, the plaintiffs asserting FAL claims in Kaksey and Colgan viewed or heard misleading statements in California and experienced the resulting harm in California as California residents.  See ibid.  Therefore, these plaintiffs satisfied the FAL's requirement that untrue or misleading statements be made "before the public in this state[.]"[6]  See Cal Bus. & Prof. Code § 17500.  The amended complaint, despite asserting that UCM suffered harm, only alleges that untrue or misleading statements were directed at UCM's clients and agency partners without specifying where either is located geographically.  See Amend. Compl. ¶¶ 209–10.  The amended complaint therefore lacks any allegation that UCM made an untrue or misleading statement "before the public in this state [i.e., California]," as required under the FAL.  See Cal. Bus. & Prof. Code § 17500.  As such, the court finds that UCM has failed to plead sufficient facts to state a claim for relief under the FAL.

### b.  Extraterritoriality

The Worldlog Defendants also argue that applying California's UCL or FAL to a

---

[6] One Federal District Court in California has framed the FAL as imposing liability either when "the injury occurred in California" or when the defendant's conduct "occurred in California."  Tidenberg v. Bidz.com, Inc., 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009).  The case involved a non-California resident plaintiff that had accessed a California resident defendant's allegedly misleading website from Texas. Id. Because the plaintiff did not view the website in California, the court concluded that she had not plausibly alleged that an untrue or misleading statement was made "before the public in this state." Id.; see also Cal. Bus. & Prof. Code § 17500.  The court thus used the site of the injury as a proxy for whether untrue or misleading statements had been made before the public in California.  See Tidenberg, 2009 WL 605249, at *4.  Using the site of the injury as a proxy for whether the Worldlog Defendants made misleading statements before the public in California is not workable here because UCM does not allege that any false or misleading statements were directed towards it.  See id.; Amend. Compl. ¶¶ 209–10.

South Carolina entity—solely on the basis of allegedly misleading statements made from South Carolina—raises significant extraterritoriality concerns.  See ECF No. 67-1 at 7–8. Before addressing this argument, the court notes that it is unsure of whether UCM's UCL claim is strictly derived from its FAL claim or whether UCM alleges a standalone violation of the UCL.  See Amend. Compl. ¶¶ 200–14; see also Nationwide Biweekly Admin., 462 P.3d at 474 ("[T]he UCL specifically provides that any practice that violates the FAL is also prohibited by the UCL.").  UCM makes no effort to distinguish its UCL claim from its FAL claim in its briefing.  See ECF No. 70 at 9–10.  As alleged, both causes of action are largely predicated on the same misrepresentations and fraudulent conduct, compare Amend. Compl. ¶ 202, with id. 209–10, except for the allegation that Worldlog migrated "UCM's customer, vendor, and shipping files for the Charleston division into a new database inaccessible to UCM."  Id. ¶ 202.  Because the court ultimately concludes that neither the UCL nor the FAL can be applied to the Wordlog Defendants' conduct, the court will not address the factual sufficiency of UCM's UCL claim.

The United States Supreme Court has placed restrictions on when a particular state's substantive law may be applied in a constitutionally permissible manner, holding that a state "must have significant contact or [a] significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818 (1985) (internal quotation marks and citation omitted).

The amended complaint makes no allegation of misconduct that occurred in California nor does it make any allegation of misconduct directed at California; it only

alleges that the Worldlog Defendants' misconduct caused it harm.  See Amend. Compl. ¶¶ 204–05, 212–13.  What is more, UCM does not allege facts that explicitly connect the harm suffered to California.  See id.  UCM attempts to remedy this shortcoming in its brief, observing that UCM must have been harmed in California because it is a California entity.  See ECF No. 70 at 10.  Even if the court draws this inference, precedent indicates that resulting harm in California, by itself, does not rise to the level of "significant contact" necessary for California law to impose liability on the Worldlog Defendants. See Shutts, 472 U.S. at 819–22 (finding insufficient contact to justify application of particular state's law to all plaintiffs' claims even when defendant "own[ed] property and conduct[ed] substantial business in the State[ ]"); Norwest Mortgage, Inc. v. Superior Ct., 72 Cal. App. 4th 214, 227 (1999) (finding that defendant's status as California entity was insufficient contact to allow non-resident plaintiffs to invoke UCL as to defendant's acts of misconduct occurring outside of California); In re Hitachi Television Optical Block Cases, 2011 WL 9403, at *9 (S.D. Cal. Jan. 3, 2011) (finding insufficient contact to apply California law to a California resident defendant that retained employees in California who accepted small percentage of warranty claims that formed basis of suit); cf. Allergan, Inc. v. Athena Cosmetics, Inc., 738 F.3d 1350, 1359 (Fed. Cir. 2013) (vacating injunction issued pursuant to UCL because it was not limited to product being "shipped into California or to sales emanating from California[,]" thereby violating the commerce clause); Yue v. Miao, 2019 WL 5872142, at 8 n.9 (D.S.C. July 27, 2019) (casting doubt on whether UCL could be applied to a defendant's online conduct in South Carolina), report and recommendation adopted, 2019 WL 6130473 (D.S.C. Nov. 19, 2019).  Cases finding sufficient contact to invoke California law counsel that some affirmative act

directed towards, or occurring in, California is necessary to apply the UCL within constitutionally permissible limits. See Clothesrigger, Inc. v. GTE Corp., 191 Cal. App. 3d 605, 613 (1987) (finding sufficient contact to apply California law when defendant maintained offices in California and prepared the promotional literature at issue in California); Diamond Multimedia Systems, Inc. v. Superior Ct., 968 P.2d 539, 542–43, 557 (Cal. 1999) (finding sufficient contact to apply California law to out of state plaintiffs' claims when a resident defendant committed acts of market manipulation in California).

The conduct causing the injury in this case is the Worldlog Defendants' misrepresentations directed at UCM clients and agency partners. Amend. Compl. ¶¶ 202, 209–10. The Amended Complaint does not contain any facts that link this alleged misconduct with California, save for the inference that UCM suffered harm in California. See id. ¶¶ 203–05, 212–13. Nor does UCM provide the court with any argument as to how this conduct creates significant contact with California. See ECF No. 70 at 9–10; see also Tidenburg, 2009 WL 605249, at *5 (refusing to apply UCL when plaintiff failed to allege any specific "facts linking Defendants' contacts with California[,]" even when defendant was a California entity) (emphasis added). As such, the court finds that UCM has not alleged conduct that creates sufficient contact with California to justify application of either the UCL or the FAL to the Worldlog Defendants. The court therefore grants the Worldlog Defendants' motion to dismiss UCM's UCL and FAL causes of action.

### 4. Common Law Fraud

UCM asserts common law fraud claims against the Individual Defendants. Am.

Compl. ¶¶ 187–91. They seek dismissal of these claims because the allegations do not meet the heightened pleading threshold of Federal Rule of Civil Procedure 9(b), ECF No. 85 at 8. They also argue that UCM has failed to plead facts that satisfy the elements of common law fraud. Id. at 9–10. UCM cites to numerous paragraphs of its amended complaint that it views as sufficient to state a claim for common law fraud. ECF No. 86 at 8–9. Should the court find that UCM has failed to state a claim for fraud, it alternatively requests leave to amend its complaint to assert a cause of action for fraudulent concealment under South Carolina law. Id. at 8 n.5.

In their motion, the Individual Defendants rely on the elements of common law fraud under California law while UCM provides the elements under both California and South Carolina law, arguing the analysis is the same under either state's law. See ECF Nos. 85 at 8, 86 at 8 & n.4. The court provides the elements of fraud under both states' law and ultimately concludes that UCM's common law fraud claims fail to state a claim under either formulation of the elements.

A claim for common law fraud consists of the following elements under South Carolina law:

> (1) a representation of fact;
> (2) its falsity;
> (3) its materiality;
> (4) either knowledge of its falsity or a reckless disregard of its truth or falsity;
> (5) intent that the representation be acted upon;
> (6) the hearer's ignorance of its falsity;
> (7) the hearer's reliance on its truth;
> (8) the hearer's right to rely thereon; and
> (9) the hearer's consequent and proximate injury.

Austin v. Stokes-Craven Holding Corp., 691 S.E.2d 135, 149 (S.C. 2010). California law requires a plaintiff to show the following elements to establish a claim for common law

fraud:

> (1) [a] misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure);
> (2) knowledge of falsity (scienter);
> (3) intent to deceive and induce reliance;
> (4) justifiable reliance on the misrepresentation; and
> (5) resulting damage.

City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445,

481 (Ct. App. 1998).

The Individual Defendants observe that UCM's common law fraud cause of

action contains only three paragraphs of substantive factual allegations:

> 188. As detailed above, Defendants made numerous misrepresentations to and concealed numerous material facts from UCM in an effort to take UCM's property.
>
> 189. UCM justifiably relied upon Defendants' representations and that he would disclose relevant material facts to UCM.
>
> 190. As a direct and proximate result of Defendants' misrepresentation and concealment, UCM has been damaged and suffered irreparable harm.

Amend. Compl. ¶¶ 188–90; see also ECF No. 85 at 9 (citing Amend. Compl. ¶¶ 188–90).

In response, UCM argues that its factual allegations show (1) that the Individual

Defendants misled UCM's customers and vendors, and (2) that the Individual Defendants

used UCM's marks, email servers, and confidential customer lists to communicate with

UCM clients and agents in an effort to convince them that Worldlog, LLC was taking

over UCM's shipments.[7] ECF No. 86 at 9. The primary defect of these allegations—as

identified by the Individual Defendants—is the absence of any assertion that UCM relied

---

[7] UCM cites to numerous paragraphs of the amended complaint to support these assertions. ECF No. 86 at 9 (citing Amend. Compl. ¶¶ 3, 6, 12, 13, 14, 16, 17, 19, 50, 54, 57, 58, 62, 63, 64, 65, 66, 209, 210). UCM's common law fraud cause of action incorporates all prior paragraphs of its amended complaint. Amend. Compl. ¶ 187.

on these statements to its detriment.  See ECF No. 85 at 9; Amend Compl.  Moreover,

UCM has not alleged that the Individual Defendants made a false statement to UCM.  See

Am. Compl.  Under both South Carolina and California law, a plaintiff must allege that

he or she relied on the defendant's misrepresentation to state a claim for fraud.  See

Austin, 691 S.E.2d at 149; City of Atascadero, 68 Cal. App. 4th at 481.  As such, the

court finds that UCM has failed to state a claim for common law fraud against the

Individual Defendants under either state's law.[8]  The court will grant UCM leave to

amend its complaint to plead a claim for fraudulent concealment because the Individual

Defendants do not oppose this request in their reply brief.  See Fed. R. Civ. P. 15(a)(2)

(providing that leave to amend shall be freely given "when justice so requires."); Powley

v. Am. Tire Distribs., Inc., 2024 WL 693531, at *1 (W.D.N.C. Feb. 20, 2024) (granting a

plaintiff's unopposed request for leave to amend complaint); see also ECF Nos. 86 at 8

n.5, 88.

### 5.  Breach of Contract

The Individual Defendants seek dismissal of UCM's breach of contract claims.

ECF No. 85 at 5.  UCM alleged that the Individual Defendants breached certain non-

solicitation agreements (the "agreement(s)") that were executed at the time of their

employment.  Amend. Compl. ¶¶ 144–52.  In the instant motion, the parties disagree as to

the enforceability of the agreements and whether they are subject to South Carolina or

California law.  ECF Nos. 85 at 5, 86 at 5–8.  The court finds that the parties have not

---

[8] Having resolved this issue on the factual insufficiency of UCM's allegations, the court dispenses with analyzing the Individual Defendants' argument that the amended complaint does not meet the heightened pleading threshold of Federal Rule of Civil Procedure 9(b).

adequately briefed the choice of law issue.[9]  As such, the court orders the parties to submit supplemental briefing on two distinct issues. First, the parties should address whether the court should apply the choice of law rules of the transferor or transferee court's forum state to claims against <u>defendants</u> added to a suit after a transfer pursuant to 28 U.S.C. § 1404(a).  Separately, the parties should provide the court with a choice of law analysis under California's government interest test.  The court briefly discusses these issues to ensure productive supplemental briefing.

### a. Law Applied After Section 1404(a) Transfer

The court begins with first principles that inform any choice of law analysis after a transfer pursuant to 28 U.S.C. § 1404(a).  A federal court exercising diversity or supplemental jurisdiction over state law claims typically applies the choice of law rules of the state in which the court sits.  <u>ITCO Corp. v. Michelin Tire Corp., Comm. Div.</u>, 722 F.2d 42, 49 n.11 (4th Cir. 1983) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496–97 (1941)).  However, when a case arrives in a district court after a transfer from another district court pursuant to 28 U.S.C. § 1404(a), "the transferee district court must  . . . apply the state law that would have been applied if there had been no change of venue."  <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 639 (1964).  Thus, a transfer pursuant to Section 1404(a) only results in a "change of courtrooms," but not a change of the

---

[9] For example, the Individual Defendants argue that California's substantive contract law applies simply because this case was transferred from the Central District of California without conducting a California choice of law analysis to determine which state's substantive contract law applies.  ECF No. 85 at 5–6.  UCM oversimplifies case law to conclude that South Carolina's choice of law analysis should determine which state's substantive contract law applies.  ECF No. 86 at 5–7.  Only on reply do the Individual Defendants endeavor to conduct a California choice of law analysis, but the analysis applies only to contracts that have a choice of law provision.  ECF No. 88 at 8–9.

substantive law to be applied. Id.; see also Ferens v. John Deere Co., 494 U.S. 516, 531 (1990) (reiterating Van Dusen's rule in holding that "the transferor law should apply regardless of . . . [the party] mak[ing] the § 1404(a) motion.").

A court may only transfer a case pursuant to Section 1404(a) when the venue initially selected by the plaintiff is an otherwise proper venue. Compare § 1404(a), with § 1406(a). Because the plaintiff's initially chosen forum was proper, applying the law of the transferor court's forum state affords the plaintiff "the benefit of the laws of the jurisdiction of which they availed themselves[,]" notwithstanding a transfer for the sake of convenience. Al Shimari v. CACI Intern., Inc., 933 F. Supp. 2d 793, 799 (E.D. Va. 2013); see also REC Software USA, Inc. v. Bamboo Solutions Corp., 2011 WL 13120813, at *2 (E.D. Va. Mar. 31, 2011) (noting that plaintiff's choice of forum is entitled to substantial deference in deciding a motion to transfer). Otherwise, as noted by the Supreme Court, "if the applicable law were to change after [a] transfer [sought by the defendant], the plaintiff's venue privilege and resulting state-law advantages could be defeated at the defendant's option." Ferens, 494 U.S. at 523.

This suit presents a question on which there is a scarcity of case law: whether the court should apply the choice of law rules of the transferor court's forum state even though the Individual Defendants were only added to this suit after a Section 1404(a) transfer. On the one hand, the court could apply the traditional rule laid out in Van Dusen and apply the choice of law rules of the forum in which the transferor court sits, which would preserve the UCM's venue privilege and any state law advantages (or disadvantages) gained therefrom. See Ferens, 494 U.S. at 523.

Conversely, the court could apply the choice of law rules of the transferee court's

forum state because the Individual Defendants were only named in this suit after transfer.

At least two district courts have taken this approach.  <u>See, e.g.</u>, <u>Z-Rock Commc'ns Corp.</u>

<u>v. William A. Exline, Inc.</u>, 2004 WL 1771569, *5–6 (N.D. Cal. Aug. 4, 2004) (reasoning

that law of transferee court's forum state applied to post-transfer defendants because

plaintiffs "had failed to invoke application of [the transferor court's] choice-of-law rules"

to post-transfer defendants);[10] <u>Ormond v. Anthem, Inc.</u>, 2009 WL 102539, at *5 ( S.D.

Ind. Jan. 12, 2009) (citing <u>Z-Rock</u> with approval and reaching same conclusion).

The parties should address whether the court should apply the traditional rule laid

out in <u>Van Dusen</u> or take the approach of the <u>Z-Rock</u> court.  The parties should address

any additional case law that speaks to this specific issue.

### b.  California Government Interest Analysis

Regardless of the position taken on the first issue, the court also requests that both

parties provide the court with a California choice of law analysis.  The court notes that

this analysis will depend on whether the agreements contain a valid forum selection

clause. <u>Compare</u> <u>Stein v. Farmers Ins. Co. of Ariz.</u>, 734 F. Supp. 3d 1021, 1030 (S.D.

Cal. 2024) ("California's common law 'government interest analysis' requires the Court

to consider which state has the greatest interest in governing the contract absent a choice

of law provision."), <u>and</u> <u>Stryker Sales Corp. v. Zimmer Biomet, Inc.</u>, 231 F. Supp. 3d

---

[10] The court notes that UCM inaccurately described <u>Z-Rock</u> to hold that "the law of the transferee court governs claims against <u>plaintiffs</u> joined [ ] after transfer pursuant to Section 1404(a)[.]"  ECF No. 86 at 5 (emphasis added).  Additionally, the Individual Defendants overstate the rationale underlying <u>Z-Rock</u>'s disposition as intended to protect "defendants from Plaintiff's calculated actions designed to subject them to favorable choice of law principles."  ECF No. 88 at 7.  While <u>Z-Rock</u> discussed forum shopping concerns, the court's ultimate disposition, as noted above, rested on the plaintiffs' failure to invoke application of the transferee court's choice of law rules to the post-transfer defendants.  2004 WL 1771569 at *6.

606, 619 (E.D. Cal. 2017) ("California courts apply a three-step 'government interest' analysis where no effective choice-of-law provision exists[.]"), with Z-Rock Commc'ns, 2004 WL 1771569, at *6 (applying different choice of law analysis when contract contained choice of law provision). For the sake of productive supplemental briefing on this issue, the court addresses UCM's argument that the following provision of the agreement constitutes a choice of law provision that mandates application of South Carolina law to any disputes arising under the agreement:

> Employee acknowledges that any breach in this contract will be subject to court rulings (in state of residence) for direct and indirect damage.

ECF No. 86 at 5. The court does not interpret this provision to be a choice of law provision because it does not explicitly state that the law of the employee's state of residence will apply to any court rulings; it only selects a forum for adjudicating claims. Cf. Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 646 (4th Cir. 2010) (considering language "provid[ing] that contract was 'subject to' the jurisdiction of English High Court" to be a forum selection clause).

In the absence of a choice of law provision, the proper choice of law analysis under California law is the government interest analysis. See Stein, 734 F. Supp. 3d at 1029 (relaying California's three-step government interest analysis); Stryker Sales Corp., 231 F. Supp. 3d at 619 (same). The court requests that the parties' supplemental briefing perform this analysis.

To summarize, the parties' supplemental briefing should address the following issues:

> (1) Whether the court should apply the choice of law rules of the transferor or transferee court's forum state to defendants added to a suit after it has been

transferred pursuant to Section 1404(a).

(2) Regardless of the position taken with respect to the first issue, the parties should address which state's substantive contract law would apply to the agreements under California's government interest analysis.

## B. Motion to Strike

### 1. Legal Standard

A motion to strike is "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (internal citations and quotations omitted). Although disfavored, Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). " 'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." Gyro-Trac Corp. v. King Kong Tools, LLC, 2022 WL 669609, at *1 (D.S.C. Mar. 4, 2022) (quoting CTH 1 Caregiver v. Owens, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012)). " 'Scandalous' [matter] includes allegations that cast a cruelly derogatory light on a party to other persons." Ibid. The grant of a motion to strike scandalous matter is designed, in part, to avoid "prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings are generally public documents and become generally available." CTH 1 Caregiver, 2012 WL 2572044, at *5 (citing 5C

Wright & Miller, <u>Federal Practice and Procedure</u> § 1382 (3d ed. 2011)).

### 2. Discussion

The Worldlog Defendants move to strike paragraph 76 of the UCM's amended

complaint.  ECF No. 68 at 3.  It states as follows:

> Indeed, Blair's and Worldlog's dishonest, deceptive and harmful practices
> have recently resulted in Worldlog being banned from participating in the
> World Cargo Alliance, which is the world's largest network of independent
> freight forwarders with over 12,843 member offices in 197 countries around
> the world.

Amend. Compl. ¶ 76.  In its initial motion, the Worldlog Defendants claim that Worldlog,

LLC is a member of the World Cargo Alliance ("WCA"), making the allegation "patently

false."  ECF No. 68 at 3 (emphasis omitted).  Both parties' briefs provide the court with

factual information in support of their respective positions.  The court will briefly relay

the relevant information from the parties' briefs.  Then, the court will discuss the parties'

arguments before finally turning to the disposition of the instant motion.

### a. Dispute Over WCA Membership Status

To prove its claim that paragraph 76 is false, the Worldlog Defendants provide the

court with an email message it received from the WCA on September 4, 2025, informing

Worldlog, LLC that it had been accepted as a member of the WCA.  ECF Nos. 68-1 at 2,

68-2 at 3.  The Worldlog Defendants also provide the court with the affidavit of Blair in

which he states that Worldlog, LLC has never been banned from the WCA and that the

previous message from the WCA is a "true and correct copy of an email reflecting

[Worldlog, LLC's] acceptance" into the WCA.  ECF No. 68-1 at 2.

UCM's response in opposition tells a different story.  First, UCM asserts that the

factual basis for paragraph 76 was a July 29, 2025 conversation between UCM vice

president Jeff Lee ("Lee") and WCA representatives in which they informed Lee that Worldlog, LLC "had been blocked from joining [the] WCA based on [the] WCA's prior investigation into certain aspects of Worldlog's conduct."[11]  ECF No. 71 at 2.  Lee was then surprised upon seeing the Worldlog Defendants' motion to strike, which indicated that Worldlog, LLC had obtained membership in the WCA.  ECF No. 71 at 2–3.  This prompted Lee to speak with WCA managing director Bryce Barnhart ("Barnhart") about the matter.  ECF No. 71 at 3.  Barnhart informed Lee that on August 14, 2025, while processing Worldlog, LLC's membership application, he placed a phone call to a number that he thought belonged to UCM to speak with Lee regarding Worldlog, LLC's application.  Id.  According to Lee, Barnhart asked to be connected with Lee and was then connected with a person purporting to be Lee but who was, in reality, an impostor.  Id.  Believing he was speaking with Lee, Barnhart asked Lee's alleged impostor if UCM had any issue with Worldlog, LLC joining the WCA given the ongoing dispute between UCM and the Worldlog Defendants.  Id.  The person purporting to be Lee responded that UCM had "no problem" with Worldlog, LLC joining the WCA.  Id.  UCM claims that Worldlog, LLC was only able to obtain its short-lived membership in the WCA because of this conversation.  Id.  UCM also asserts that when Barnhart learned he had not been speaking with Lee, the "WCA revoked [Worldlog, LLC's] membership and has denied their appeals."  Id.

In reply, the Worldlog Defendants characterize UCM's response in opposition as relying on "inflammatory and unsupported 'testimony' to demonstrate that [Worldlog

---

[11] UCM provides the court with an affidavit from Lee to support its claims regarding UCM's membership status in the WCA.  See ECF No. 71-1.

LLC's] membership status in the WCA is material to UCM's claim for trademark infringement." ECF No. 72 at 1–2.  The Worldlog Defendants also urge the court to ignore Lee's affidavit because it is "unsubstantiated hearsay."  Id. at 1 n.1.

The Worldlog Defendants then represent that the WCA terminated its membership in the organization on September 24, 2025.  Id. at 2.  The Worldlog Defendants sought an explanation from the WCA and received the following response:

> After your application was approved and membership commenced, details came to light which prompted me to do some additional checks, including [on] phone calls to numbers which were listed for UCM but are actually ringing to WCM's office, and on two of those occasions I was very pointedly misled by your staff.

Id. at 2.  Attempting to remedy the situation, the Worldlog Defendants then apparently provided the WCA with "proof" that Barnhart had called a number belonging to Worldlog, LLC and explained that Barnhart's prior communications with it were mere "miscommunication[s]."  Id.  The WCA then purportedly apologized "for this fiasco[,]" and, a day later, informed Worldlog, LLC that its membership would remain terminated due to a one year waiting period.  Id. at 3.

### b.  The Parties' Arguments

The Worldlog Defendants argue in their initial motion, which was filed during the short time period that Worldlog, LLC maintained membership in the WCA, that paragraph 76 should be stricken because it was false and, therefore, immaterial and solely designed "to cast a derogatory light on Defendant with no . . . connection to the claims in the case[.]"  ECF No. 68 at 5 (quoting Holland v. Beaufort Cnty., 2021 WL 5991790, at *2 (D.S.C. Jan. 13, 2021)).  Worldlog further asserts that its status as a member of the WCA has "zero relationship" to any of UCM's causes of action and "serves no other

purpose than to harm [Worldlog, LLC's] business reputation." ECF No. 68 at 4–5 (citing Swift Beef Co. v. Alex Lee, Inc., 2018 WL 792070, at *3 (W.D.N.C. Feb. 8, 2018)).

UCM's response in opposition—in addition to indicating that Worldlog, LLC's membership in the WCA had been terminated—argues that paragraph 76 and Worldlog's membership status with the WCA "bear[ ] an essential and important relationship [to] [UCM's] claim for trademark infringement, which rests on factual determinations regarding [the Worldlog Defendants'] use of UCM's marks and resulting customer confusion." ECF No. 71 at 3. UCM also argues that the allegation in paragraph 76 is more relevant now that it believes the Worldlog Defendants have used fraud and impersonation to briefly attain membership in the WCA because such actions, if true, would confirm a pattern of deceptive behaviors on the Worldlog Defendants' part that form the basis of UCM's amended complaint. Id. at 4.

In reply, the Worldlog Defendants counter that UCM has not established how its allegations that Worldlog, LLC is banned from the WCA will aid UCM in proving customer confusion. ECF No. 72 at 3. The Worldlog Defendants make one final persuasive point in that paragraph 76, as it is currently written, states that Worldlog, LLC is banned from the WCA, which at this moment, is not true according to both parties. Id. at 4; see also ECF No. 71 at 3 (UCM's brief indicating that Worldlog, LLC briefly obtained membership status in the WCA before having its membership revoked). The Worldlog Defendants liken the distinction to "being absent from the party" versus "being thrown out of the party[,]" concluding that the latter is "scandalous." ECF No. 72 at 4

28

(emphasis omitted).

### c.  Disposition of Motion to Strike

Because the information relayed in UCM's own response in opposition indicates that Worldlog, LLC's membership in the WCA was indeed only terminated, the court agrees with the Worldlog Defendants that paragraph 76 of the amended complaint, as it is currently written, is not true according to both parties.  See ECF Nos. 72 at 2–4, 71 at 3. The court also recognizes that such an allegation could inflict harm on Worldlog LLC's business reputation.  In light of these considerations, the court will grant the motion to strike.  See Holland, 2021 WL 5991790, at *2 (granting motion to strike with respect to allegations that could "cause some form of significant prejudice to Defendant if allowed to remain in the Complaint[.]"); Swift Beef, 2018 WL 792070, at *3 (striking allegations that, although "unequivocally based in fact[,]" were designed to "harm plaintiff's business reputation unnecessarily.") (emphasis added).  Beyond what the parties agree on, the court is not inclined to make factual determinations on the basis of dueling affidavits in what is evidently an ongoing situation.

That being said, UCM's argument that Worldlog, LLC's membership status in the WCA might aid UCM in proving customer confusion has some merit.  If the WCA and its members wish to exclude Worldlog, LLC from the WCA due to the Worldlog Defendants' allegedly deceptive business practices, then Worldlog LLC's disbarment from the organization could serve as evidence that the industry perceives its business practices as deceptive and confusing.  See ECF No. 71 at 3.  Similarly, if Worldlog, LLC did obtain its brief membership in the WCA using deception, such an allegation would confirm a pattern of deceptive behavior that underlies many of the allegations in UCM's

amended complaint.  <u>See</u> <u>id.</u> at 4.  Therefore, the court will grant UCM leave to re-plead paragraph 76 of its amended complaint if discovery reveals (1) that Worldlog, LLC obtained membership in the WCA through deception, or (2) that the WCA terminated Worldlog LLC's membership in the WCA because the Worldlog Defendants engaged in business practices that could cause customers to mistake Worldlog, LLC for UCM.

## IV.   CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss this action in its entirety are **DENIED**.  The Defendants' motions to dismiss are **GRANTED** as to UCM's Section 1125(d) claim to the extent that the claim is premised on Defendants' use of the domain name "www.worldlogllc.com."  The Worldlog Defendants' motion to dismiss UCM's UCL and FAL causes of action is **GRANTED**.  The Individual Defendants' motion to dismiss UCM's common law fraud claim is **GRANTED**.  UCM's request for leave to amend its complaint to plead a claim for fraudulent concealment is **GRANTED**. The Worldlog Defendants' motion to strike is **GRANTED** with the conditions set forth above.

The court **ORDERS** the parties to submit supplemental briefing on the choice of law issue that pertains to UCM's breach of contract claim against the Individual Defendants.  The Individual Defendants shall have twenty (20) days from the issuance of this order to submit their supplemental briefing.  After the Individual Defendants submit their supplemental briefing, UCM shall have ten (10) days to respond.

**AND IT IS SO ORDERED.**



**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 23, 2026**
**Charleston, South Carolina**